PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| VICTORIA ATTINA, | ) | CASE NO. 1:09CV1946 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE ADAMS |
|  | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| MICHAEL J. ASTRUE, Commissioner of | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Victoria Attina seeks judicial review of the Social Security Administration's

final decision denying her application for Disability Insurance and Supplemental Security Income

(collectively "benefits").  ECF No. 15 at 1.

For the reasons provided below, the undersigned recommends that the Social Security

Administration's decision denying benefits to Attina be affirmed.

## I.  Overview

Attina was born July 14, 1961 and was 47 years old at the time of the supplemental

hearing before Administrative Law Judge ("ALJ") Alfred Lucas.  (Tr. 434); ECF No. 12 at 2.

Attina has a ninth grade education and her past employment is comprised of working as a home

health aide and a tending machine operator.  (Tr. 18, 120, 434, 457-58.)

The ALJ found that Attina suffers from the following severe impairments: degenerative

disc disease of the lumbar spine, status post multiple surgeries, bilateral L5 spondylosis;

(1:09CV1946)

fibromyalgia; and disc bulges of the lumbar spine without stenosis.  (Tr. 13.)  The ALJ did not

find that Attina has an impairment or combination of impairments that meets or medically equals

the listings.  (Tr. 14.)

After reviewing the administrative record as a whole, including the medical records,

relevant testimony, and the legal standards applied, the Court finds the ALJ's decision to be

based upon appropriate legal standards and supported by substantial evidence.

## II.  Procedural History

On February 10, 2006, Attina filed applications for benefits alleging a disability as of

September 18, 2005.  ECF No. 12 at 1.  The Agency initially denied Attina's claims, and again

denied the claims upon reconsideration.  ECF No. 12 at 1.  On October 23, 2008, the ALJ held a

hearing in Cleveland, Ohio.  ECF No. 12 at 2.  During that hearing it was decided that the

Medical Expert, Dr. Hershel Goren, should be given the opportunity to review late-submitted

medical records, that two consultative examinations should be scheduled, and that Attina's

counsel should attempt to obtain records of Attina's first spinal surgery.  ECF No. 12 at 2.

Almost four months later, on February 12, 2009, the ALJ held a supplemental hearing

with only Attina, her counsel, and a Vocational Expert in attendance.  ECF No. 12 at 2.  On April

1, 2009, the ALJ issued a decision denying benefits concluding that Attina "has not been under a

disability as defined in the Social Security Act, from September 18, 2005 through the date of this

decision."  (Tr. 20.)  Attina subsequently filed a request for review of the ALJ's decision which

the Appeals Council denied.  Because the Appeals Council denied Attina's request for review,

the ALJ's April 2009 decision became the final decision of the Agency.  Seeking a review of the

2

(1:09CV1946)

Agency's final decision denying her benefits, Attina timely filed a complaint with this Court

asserting the following:

> Whether substantial evidence supports the Administrative Law Judge's finding that
> Plaintiff can perform a reduced range of light work?  Specifically, whether the ALJ
> properly complied with the Treating Source Rule; whether the ALJ devised an
> accurate residual functional capacity; and whether the ALJ properly declined the
> assistance of a medical expert at hearing?

ECF No. 12 at 1.

### III.  Law and Analysis

### A.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health

& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the

ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The ALJ's

decision must be affirmed if it is supported by substantial evidence even if the reviewing court

had decided the matter differently, and even if substantial evidence also supported a different

(1:09CV1946)

conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B.  Standard for Establishing Disability

To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of

4

(1:09CV1946)

the claimant's impairments.  A claimant is not disabled if he does not have a severe medically

determinable physical or mental impairment that also meets the duration requirement in 20

C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration

requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that

meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration

requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if he has

an impairment that meets the listing and the duration requirement.  Before considering the fourth

step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the

claimant's ability to perform physical and mental work on a sustained basis despite limitations

from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to

perform past relevant work.  The claimant bears the burden of proof at steps one through four.

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the

burden shifts to the Commissioner to identify "a significant number of jobs in the economy that

accommodate the claimant's residual functional capacity (determined at step four) and vocational

profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and his age, education,

and work experience to determine whether the claimant may work.  Even if the claimant's

impairment does prevent him from doing his past relevant work, if other work exists in the

national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v.

Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25

(2003) (describing five-step evaluation).

(1:09CV1946)

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").  The burden of proof regarding the establishment of disability onset date lies with the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision.  *See* *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations.  20 C.F.R. § 404.1512(c).

### C. **Substantial Evidence Supports the ALJ's Finding that Attina is Not Disabled**

It is Attina's opinion that the ALJ's written decision held several errors and was not supported by substantial evidence.  ECF No. 12 at 5.  Specifically, Attina asserts that (1) the ALJ did not follow the treating source rule, (2) the ALJ's residual functional capacity finding is erroneous and (3) the ALJ should have retained the services of a medical expert for the hearing.  ECF No. 12 at 1.  Generally, Attina claims that while the ALJ's finding that she can perform "less than the full range of light work" is not supported by substantial evidence, the record does, however, show that she is disabled.  ECF No. 12.

6

(1:09CV1946)

Overall, Attina employs the wrong test.  The Sixth Circuit recently reiterated: "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The correct test, therefore, is whether substantial evidence supports the ALJ's conclusions, not whether substantial evidence *also* supports Attina's.  Despite Attina's objections, the ALJ's decision is supported by substantial evidence.  Even if, assuming *arguendo*, substantial evidence also supports Attina's conclusions, that alone is not a basis for overturning the ALJ's decision.  For the reasons below, Attina's objections should be overruled.

## 1. <u>Weight Assigned Treating Physician's Opinions, Generally</u>

The Agency promises claimants that ALJs "will evaluate every medical opinion [they] receive."  20 C.F.R. § 404.1527(d).  Yet, it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: non-examining sources, non-treating (but examining) sources, and treating sources.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  A treating physician, accorded the most deference by the Agency, has not only examined the claimant but also has an "ongoing treatment relationship" with her consistent with accepted medical practice.  *Id.*  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition."  *Id.*

When evaluating medical opinions, the Agency will generally "give more weight to the

7

(1:09CV1946)

opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her.  *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(1).  The Agency will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ."  *Smith*, 428 F.3d at 875; 20 C.F.R. § 404.1527(d)(2).  Evidence from non-examining sources is also considered opinion evidence.  20 C.F.R. § 404.1527(f).[1]

Treating physicians opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p.  When the treating physician rule does not apply, the ALJ must continue to weigh the treating source's opinion under the following factors: "the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source" in determining what weight to give the opinion."  *Wilson*, 378 F.3d at 544 (*discussing* 20 C.F.R. § 404.1527(d)).

The Agency is tasked to ". . . give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion."  *Wilson*, 378 F.3d at 544

---

[1]  The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us."  20 C.F.R. § 404.1527(f)(2)(ii).

(1:09CV1946)

(*quoting* 20 C.F.R. § 404.1527(d)(2)).  This requirement ensures "the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule."  *See Wilson*,

378 F.3d at 544.  In addition, the reason-giving requirement "exists, in part, to let claimants

understand the disposition of their cases, particularly in situations where a claimant knows that

his physician has deemed her disabled and therefore might be especially bewildered when told by

an administrative bureaucracy to that he [sic] is not, unless some reason for the agency decision

is supplied."  *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).

Attina's challenges to the diminished weight given the opinions of her treating physician,

Dr. Schaefer, allege that the ALJ: (1) did not appropriately articulate his rationale for discounting

the treating physician's opinion, (2) improperly resolved conflicting evidence and, (3)

erroneously found Dr. Schaefer to have relied upon faulty information.  The undersigned's

review of the record and the ALJ's analysis does not support Attina's concerns regarding the

ALJ's reliance upon the opinions of Dr. Schaefer.  Rather, that review shows that the ALJ

appropriately considered the opinions of Dr. Schaefer in accordance with the treating source rule

and sufficiently articulated his reasons for giving "little weight" to those opinions.

### a.  Dr. Schaefer Qualifies as a Treating Physician

 "A physician is a treating source if he [or she] has provided medical treatment or

evaluation and has had an ongoing treatment relationship with the claimant . . . 'with a frequency

consistent with accepted medical practice for the type of treatment and/or evaluation [that is]

typical for the [treated conditions].'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.

2009) (*citing* 20 C.F.R. § 404.1502).  There seems to be no disagreement that Dr. Schaefer

(1:09CV1946)

qualifies as a treating physician as the record evinces the type of ongoing treatment relationship

contemplated by the plain language of the treating physician regulation.  The record also supports

the ALJ's classification of Drs. Michael Eppig and Michael Harris as treating physicians.[2]  (Tr.

16.)  The unresolved issue is whether the ALJ gave Dr. Schaefer's opinions the appropriate

weight pursuant to the treating physician rule.

### b.  The ALJ Assigned Dr. Schaefer's Opinions the Proper Weight

The ALJ discounted the weight given to Dr. Schaefer's opinions because those opinions

conflicted with and were not supported by Dr. Schaefer's own progress notes and other record

evidence, including that provided by treating physicians Michael Eppig and Michael Harris.

Attina's first objection is that the ALJ did not give examples of specific progress notes

that conflicted with Dr. Schaefer's opinions.  ECF No. 12 at 13.  Attina's challenges to the ALJ's

compliance with the treating physician rule on this ground do not rise to a level that requires

interference from the Court.  A thorough review of Dr. Schaefer's progress notes and other

record evidence demonstrates that Dr. Schaefer's overall opinions regarding the extent of

Attina's physical limitations conflicts with his own progress notes and as well as with other

evidence in the record.  (*See e.g.* Tr. 103, 106, 113, 119,146, 150,153, 158-165,169-178, 203,

215, 226, 239, 243, 247, 254, 261, 263, 343, 366- 373, 410, 413.)  In making this point, the ALJ

offered the example of the disparity in the lengths of time Attina could allegedly stand and walk.

---

[2]  Attina has not objected to the ALJ's classification of Drs. Eppig or Harris' classification as treating physicians nor his treatment of their opinions and has, therefore, waived the right to object.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989) (issue waived if not raised).

(1:09CV1946)

(Tr. 18.)  On December 16, 2008, Attina told Dr. Togliatti-Trickett, a consultative examiner, that she could "stand and walk for two hours each throughout the day."  (Tr. 166.)  Almost a month later on January 14, 2009 Dr. Schaefer found that Attina could only walk and stand less than two hours a day.  (Tr. 155.)

Attina argues that the ALJ erred in relying on this evidence to discount Dr. Schaefer's opinion because it is not clear that Dr. Schaefer's opinion conflicts with Attina's statement to Dr. Togliatti-Trickett.  Attina suggests there may be no "great degree of difference" between the two opinions and avers that Dr. Schaefer would have a "more realistic and reliable medical opinion of [Attina's] capabilities."  ECF No. 12 at 13.   The Supreme Court has held that evidentiary conflicts are "not uncommon" and that they are not a basis for overturning the ALJ's decision.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  "The substantial-evidence standard ... presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts."  *See Blakely v. Comm'r Soc. Sec*., 581 F.3d 399, 406 (2009) (internal citations omitted).  The evidence provided by Dr. Togliatti-Trickett and treating physicians Eppig and Harris do not document the significant difficulty with Attina's walking, standing, or sitting opined by Dr. Schaefer.  The ALJ's conclusion falls within his zone of choice.  Because substantial evidence supports the ALJ's decision, the undersigned defers to that finding "even if there is "substantial evidence in the record that would have supported an opposite conclusion."  *Id*.

Attina also disputes the ALJ's finding that Dr. Schaefer's opinion was based on "faulty

11

(1:09CV1946)

information."[3] Attina argues that Dr. Schaefer could not have concurred with Dr. Eppig's reading because Dr. Schaefer's January 14th opinion was offered before the January 20th CT scan which gave rise to Dr. Eppig's January 29th determination regarding the CT scan.[4] Review of the ALJ's written decision and the record reveals that the ALJ's written decision refers to a document dated January 14, 2009 and entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" authored by Dr. Schaefer _and_ progress notes made _after_ that January date. These documents are not voluminous, part of the record, and available for review.

The ALJ wrote: "Dr. Schaefer's opinion is based on faulty information. He agreed with Dr. Eppig that films showed a surgical non-union at L5-S1, but this finding is not supported by the evidence." (Tr. 18.) The ALJ's source appears to be progress notes Dr. Schaefer's dated February 3, 2009 which state, in pertinent part: "she was seen by Dr. Eppig in 1/09 . . . L-S spine CT showed, per Dr. Eppig reading . . . She has a distinct nonunion through the L-5 S-1 fusion."[5] (Tr. 143, 145, 146 and Exs. 278F, 276F, 275F.) The ALJ correctly noted the date of Dr.

---

[3] The ALJ found that Dr. Schaefer concurred with Dr. Eppig's reading of a 2009 CT scan that made a finding – a "very distinct" non-union, suggesting that the previous surgery did not work – that contrasted with other evidence in the record – Dr. Judith Simon, a radiologist's interpretation of the CT scan as a successful fusion, suggesting that the previous surgery did work. (Tr. 150 (Ex. 271F), 153 (Ex. 268F).)

[4] In sum, Plaintiff objects to the ALJ's criticism of Dr. Schaefer claiming that because Dr. Schaefer's opinion predates both Dr. Eppig's and the CT scan Dr. Schaefer could not have relied upon what did not yet exist and (in any case) that it is "incorrect that Dr. Schaefer's opinion was 'based on' Plaintiff's fusion, failed or not." ECF No. 12 at 14.

[5] These notes are made in a "joint effort in all areas" with a resident, M. Zelin. Rd. Schaefer stated that he reviewed the resident's documentation and agreed with its content. (Tr. 145, Ex. 276F.)

12

(1:09CV1946)

Schaefer's "opinion" as January 14, 2009.  Dr. Schaefer's progress notes which offer additional

medical opinions also referenced in the ALJ's written decision are dated February 3, 2009.[6]

 The record in this case is not unusually large or otherwise complex.  The ALJ's failure to

explicitly identify each record relied upon in a fairly limited universe of documents attributable

to Dr. Schaefer is, if a violation at all, an excusable *de minimis* violation because (1) the Court

can perform a meaningful review of the ALJ's written decision as the ALJ's reasoning is

"sufficiently specific to make clear," that the ALJ had "good reason" to give Dr. Schaefer's

opinions "little weight," (2) the Commissioner "has met the goal of the procedural safeguard of

reasons" because the ALJ had more than one reason for giving Dr. Schaefer's opinions "little

weight," including inconsistency between his progress notes, other record evidence and his

January 2009 opinion, and (3) the deficiency [has] no practical effect on the outcome of the case.[7]

A "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the

deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete analysis

and unresolved conflicts of evidence can serve as a basis for remand.  *Reeder v. Apfel*, 214 F.3d

---

[6]  The ALJ articulated his reasoning for not crediting Dr. Eppig's determination when he noted that there is no recent MRI in the record to support Dr. Eppig's opinion, Dr. Togliatti-Trickett's opinion does not support a non-union, and Attina's range of daily activities decreases the reliability of Dr. Eppig's determination.  (Tr. 18.)  The ALJ also noted in his reasoning for not crediting Dr. Schaefer as a treating physician that an earlier May 2008 MRI with Dr. Simon revealed "posterior fusion from L5-S1 with no significant canal or foraminal encroachment (Exhibit 206F)," which suggests that the surgery worked.  (Tr. 18.)

[7]  *See also Masters v. Astrue*, 2008 WL 4082965, at *3 (E.D. Ky. Aug. 29, 2008) (*citing Heston*, 245 F.3d at 535) ("failure to explain weight given to treating physician is not reversible error where ALJ's opinion is nonetheless supported by substantial evidence and error was harmless").

(1:09CV1946)

984, 988 (8th Cir. 2000) (The *Wilson* Court instructs that where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation.).[8]

Finally, Attina's objection to the ALJ's alleged reliance upon the medical disagreement over the status of Attina's fusion (in tact or not) as a basis to discount Dr. Schaefer's opinions is without merit. A treating physician's opinion is only guaranteed deference when it is both supported by substantial evidence and uncontradicted. Minimally, Dr. Schaefer's opinion regarding the fusion is contradicted by other medical evidence in the record. The ALJ accurately noted that Dr. Schaefer relied on Dr. Eppig's reading of the 2009 CT scan which Dr. Eppig indicated showed "a very distinct" non-union. (Tr. 18.) The radiologist found no such condition. (Tr. 18.) Yet, Dr. Schaefer wrote that he "really valued" Dr. Eppig's input. (Tr. 145.) The ALJ reasonably measured Dr. Schaefer's opinion regarding the fusion against other such conflicting evidence and appropriately found Dr. Schaefer's opinion lacking and ineligible for controlling weight.

As stated above, treating physician's opinions are entitled to controlling weight only if they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20

---

[8] *See Wilson*, 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Wilson,* 378 F.3d at 547. However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

14

(1:09CV1946)

C.F.R. § 404.1527(d)(1); SSR 96-2p.  In the instant matter, Dr. Schaefer's opinions, including

those recorded on January 14, 2009 and in his subsequent progress notes, contained information

that was not supported by evidence in the record.  (Tr. 18.)  Those opinions were contradicted by

other physicians which were supported by substantial evidence.[9]  Accordingly, the undersigned

finds that the ALJ properly considered and attributed lesser weight to the opinions of Dr.

Schaefer under the treating physician rule.  Based upon the record before the Court, the ALJ was

not required to give Dr. Schaefer's opinions controlling weight and sufficiently articulated his

reasons for that determination.

## 2. The ALJ Appropriately Determined Attina's Residual Functional Capacity

The residual functional capacity ("RFC") finding is an administrative assessment of what

an individual can still "do despite [her] limitations."  *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p.

The ALJ applies a legal standard to the medical facts concerning the claimant's functional

abilities when determining an RFC.  *See Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996).

Thus, the ALJ's determination of a claimant's RFC is a legal decision rather than a medical one.

*See* 20 C.F.R. § 416.927(e)(2); SSR 96-5p; 61 Fed. Reg. 34471, 34474 (1996).  As such, the final

responsibility for deciding the RFC is reserved to the Commissioner.  20 C.F.R. § 416.946(c); 20

---

[9]  In addition to the physicians mentioned above, the ALJ also gave weight to State Agency reviewing physician, Myung Cho. (Tr. 17.)  In June 2006, Dr. Cho opined that Attina could perform a range of light work.  (Tr. 17.)  Weight was given to Dr. Cho's opinions on lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching and crawling because they were consistent with and supported by the record evidence.  The ALJ gave no weight to Dr. Cho's opinions on sitting, standing, and walking because evidence at the hearing showed Attina was more limited than Dr. Cho opined.  (Tr. 17, 369.); *See also* note 12.

(1:09CV1946)

C.F.R. § 416.927(e)(2).

In determining Attina's RFC, the ALJ appropriately followed the two-step analysis wherein he first determined if any impairments exist that could reasonably be expected to produce Attina's symptoms. (Tr. 15.) After considering the evidence in the record, the ALJ found that Attina's physical impairments reasonably could be expected to produce the alleged symptoms. (Tr. 15.) The next step required the ALJ to evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit Attina's ability to work. In completing this task, it was incumbent upon the ALJ to assess Attina's credibility.

### a. **The Credibility Assessment is Integral to an RFC Determination**

Generally, it is for the Secretary and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. *See Heston*, 245 F.3d at 536. Specifically, credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004) (*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Although an ALJ's credibility finding is entitled to great deference, it must nonetheless be supported by substantial evidence. *See King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984) (an ALJ's adverse credibility finding is not supported by substantial evidence where the claimant's testimony was consistent with uncontradicted medical evidence).

If the ALJ finds that the objective medical evidence does not support the claimant's

(1:09CV1946)

allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record.  *See Villareal*, 818 F.2d at 463; 20 C.F.R. § 416.929   In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record.  *See* SSR 96-7p.  The ALJ should consider seven factors when determining whether medical evidence supports a particular claim.[10]  The ALJ need not detail his analysis of each of the seven factors, but should make clear that he considered all relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

If the ALJ rejects a claimant's testimony as being not credible, the ALJ must clearly state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight.  *Id.* at 733; SSR 96-7p; *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 94, 95 (6th Cir. 1987).

Here, the ALJ found that Attina's "statements concerning intensity, persistence and limiting effects of these symptoms [were] not credible . . . ."  (Tr. 15.)  As evidence of Attina's lack of credibility the ALJ highlighted Attina's (1) non-compliance with medical advice regarding increasing physical activity and taking prescription medications (Tr. 16-17.); (2) inconsistences in testimony regarding medication, daily activities, and her alleged disability (Tr.

---

[10]  The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 96-7p.

(1:09CV1946)

17.); (3) failure to regularly be seen by a doctor in 2006 (Tr. 17.); and (4) daily living activities

are not as limited as one would expect given her alleged disabling symptoms (Tr. 17.).[11]

 The ALJ clearly articulated his reasons for discounting Attina's credibility.  (Tr. 16-17.)

Although not required to discuss individually each of the seven factors, the ALJ devoted nearly

four full pages in his written decision to demonstrating that he considered the relevant evidence,

in compliance with the process outlined in 20 C.F.R. § 416.929.  (Tr. 18-20); *See also Cross*, 373

F. Supp. at 733.  The undersigned, therefore, defers to the ALJ's determination of credibility, as

it is supported by substantial evidence and made in accordance with Agency regulations.

### b.  Substantial Evidence Supports the ALJ's Finding Regarding Attina's Use of her Arms or Upper Extremities

 The ALJ found that Attina could perform less than the full range of light work.[12]  The

ALJ's RFC determination, including Attina's ability to use her arms, physically requires no more

of Attina than the record shows that she is capable of performing.  Attina's statement that the

ALJ rejected "any upper-extremity limitations" is an exaggeration.  *See* ECF No. 12 at 17.

 The ALJ gave consideration to both the objective and subjective evidence of Attina's

---

 [11]  The ALJ noted that at the supplemental hearing Attina testified she can "do dishes, do laundry, dust, feed herself, and attend church."  (Tr. 16.)  The ALJ found that the record establishes she can "shop, do dishes, care for her mother, drive, do housework, swim, travel independently, walk a block at a reasonable pace, use public transportation, prepare simple meals, and care for personal hygiene."  (Tr. 16-17.)

 [12]  "Specifically, she can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently.  She can sit for four hours, stand for two hours, and walk for two hours in a normal workday.  She must have a sit-stand option that allows her to change from sitting to standing or vice versa as necessary to relieve pain.  She requires a cane for ambulation.  She cannot climb ladders, ropes or scaffolds and cannot work at unprotected heights.  She can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch and crawl."  (Tr. 14.)

(1:09CV1946)

limitations found in the record.[13]  For example, he remarked that Dr. Schaefer's "[n]otes from May 2007 show that [Attina] had 'mildly' reduced range of motion but no evidence of crepitation, effusion or tenderness (Exhibits 182F).  Progress notes from January 2008 revealed similar findings (Exhibit 219F) [sic].  A consultative examiner [Dr. Togliatti-Trickett] said the claimant could continuously reach, handle, finger and feel bilaterally (Exhibit 246F)."[14]  (Tr. 13-14.)  The ALJ also noted that "[t]here is no evidence of any objective EMG's or nerve conduction studies in the record." (Tr. 14.)  Dr. Togliatti-Trickett found Attina's upper extremity range of motion to be within normal limits.[15]  Drs. Eppig and Harris agreed.  (Tr. 263, 284, 323, 261.)  Even Dr. Schaefer's evaluation resulted in medical intervention no more intrusive than the use of wrist bands and only occasional wrist injections.

Attina poses no meaningful contradictions through her subjective assessments or interpretations of the objective evidence.  She complained of "hand pain" and "testified that the

---

[13]  That carpal tunnel syndrome was not among the severe impairments the ALJ attributed to Attina has no negative or legal effect on the final disability determination given that the ALJ found other severe impairments and continued the analysis based thereupon.  *See* ECF No. 15 at note 3.

[14]  In his written decision, the ALJ noted that progress notes from visits with Dr. Schaefer in September 2007 and January and April of 2008 show Attina had ". . . no evidence of crepidation.  No effusion, no synovoitis or tenderness, muscle activation."  (Tr. 203, 223, 239.)  (The ALJ cited to transcript page 219F, however, the correct citation is 218F.  This was an understandable mistake as the transcript page number is slightly obscured.)

[15]  In December of 2008, Dr. Togliatti-Trickett, a State Agency consultative examiner, found that claimant could continuously reach, handle, finger and feel bilaterally.  (Tr. 14, 175.)  The ALJ gave the opinions of Dr. Tigliatti-Trickett "great weight" because "they are consistent with and supported by the weight of the evidence, by the statements the claimant made to her, and because Dr. Togliatti-Trickett examined the claimant."  (Tr. 18.)

(1:09CV1946)

pain in her hands 'comes and goes' but is worse at night.  She [also] said that the pain in her arms is constant and severe."  (Tr. 15.)   She testified that she could, among other things, do dishes, laundry, dust, drive, care for and feed herself – tasks which typically require the use of ones arms.  (Tr. 16.)   Additionally, it is of no consequence that Dr. Schaefer wrote that an EMG showing "moderate bilate CTS" had been performed because Dr. Schaefer did not provide the EMG  results.  Similarly, Dr. Shue Que wrote that an EMG had been performed without attaching results.  More notably, however, Dr. Shue Que also reported no negative neurologic or muscloskeletal symptoms.  (Tr. 230-231.)

        The Commissioner is correct in pointing out that the burden of providing a complete record rests with the claimant.  *See* ECF No 15 (*citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002).  Attina has failed to present evidence of greater limitations than those shown in the record.  More importantly, she has failed to refute the significant objective and subjective evidence that supports the ALJ's findings regarding the use of her arms or upper extremities. Ultimately, the record establishes that Attina is not disabled and that a significant number of jobs are available for a person with her RFC.

        In order to determine whether a significant number of jobs existed which a claimant with Attina's capabilities could perform, the ALJ presented a Vocational Expert (or "VE") with the capabilities and limitations of four hypothetical persons.  With each hypothetical, the limitations became less severe.  Attina argues that the second hypothetical most accurately mirrored her RFC as espoused by Dr. Schaefer.  (Tr. 458 - 462.)  The third and fourth hypotheticals mirrored variations of the ALJ's RFC for Attina.  In response to the second hypothetical, the VE found

20

(1:09CV1946)

that there are not a significant number of jobs that this hypothetical claimant could perform on a full-time basis.  (Tr. 459.)  In response to the third and fourth hypotheticals, the VE found a significant number of jobs located nationally that the hypothetical claimant could perform.  (Tr. 461-462.)

It is the claimant's burden to prove disability.  Attina has failed to do so.  The ALJ has met his obligations to determine whether Attina can perform past relevant work or, in the alternative, whether there are a significant number of jobs in the national economy that she can perform.  Whereas the limitations described in the second hypothetical lack support in the record, the limitations described in the response to the third and fourth hypotheticals are supported by substantial evidence in the record.  Having appropriately determined that the evidence as a whole did not support the limitations found in the second hypothetical, including upper extremity limitations, and that the second hypothetical did not accurately portray Attina's impairments, the ALJ reasonably chose not to rely upon the second hypothetical and justifiably found that Attina could perform available jobs, based on the Vocational Expert's responses to the third and fourth hypothetical.

### 3.  The ALJ was not Required to Consult a Medical Expert at the Supplemental Hearing

The primary function of a Medical Expert (or "ME") is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, who is not a medical professional, may understand.  *See Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972).  The regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of

(1:09CV1946)

[the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404,1527(f)(2)(iii).  The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert.  HALLEX I-2-5-32 (September 28, 2005).  "The primary reason an ALJ may obtain Medical Expert opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." Id.  The operations manual indicates that an administrative law judge "may need to obtain an Medical Expert's opinion" in certain circumstances.[16]  HALLEX

---

[16]  These circumstances include:

. the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);

. the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;

. the ALJ is assessing a claimant's failure to follow prescribed treatment;

. the ALJ is determining the degree of severity of a claimant's physical or mental  impairment;

. the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an Medical Expert may be able to suggest additional relevant evidence;

. the medical evidence is conflicting or confusing, and the ALJ believes an Medical Expert may be able to clarify and explain the evidence or help resolve a conflict;

. the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an Medical Expert may be able to explain the findings and assist the ALJ in assessing their clinical significance;

. the ALJ is determining the claimant's residual functional capacity, e.g., the ALJ may ask the Medical Expert to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;

. the ALJ has a question about the etiology or course of a disease and how it may affect the

(1:09CV1946)

I-2-5-34 (September 28, 2005).

An administrative law judge's determination of whether a Medical Expert is necessary is discretionary.  An administrative law judge abuses his discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations.  *See* 20 C.F.R. § 416.1444."  *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir.1989).

Attina asserts that the ALJ should have obtained the services of a Medical Expert because there is a dispute between the treating surgeon's (Dr. Eppig) interpretation and the radiologist's (Dr. Simon) interpretation of Attina's January 2009 CT scan.  ECF No. 12 at 17.  Attina argues that the ALJ was not qualified to reject the opinion of the treating surgeon without the assistance of a Medical Expert and because the ALJ did not consult a Medical Expert he erred in finding Attina not disabled.  ECF No. 12 at 17.  Attina, again, fails to recognize the discretion provided the ALJ.

In his written decision, the ALJ noted that there were no recent MRIs in the record, but that he had reviewed Attina's MRI of the lumbar spine from May 2008.  (Tr. 18.)  That MRI "revealed posterior fusion from L5-S1 with no significant canal or foraminal encroachment (Exhibit 206F)."  (Tr. 18.)  The ALJ also noted that Dr. Togliatti-Trickett's opinion and Attina's

---

claimant's ability to engage in work activities at pertinent points in time, e.g., the ALJ may ask the Medical Expert to explain the nature of an impairment and identify any medically contraindicated activities; or

. the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005).

(1:09CV1946)

testimony describing her daily activities did not support Dr. Eppig's interpretation.  (Tr. 18.)  The ALJ's written decision, strongly suggests that he looked for evidence to support Dr. Eppig's reading of the 2009 CT scan, but instead found evidence that supported Dr. Simon's – the radiologists' – interpretation.

The ALJ, not a Medical Expert, determines a claimant's disability status.  *Walker v. Secretary of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (finding that the ultimate decision of disability rests with the ALJ); 20 C.F.R. § 404.1527, §416.927.  In this case, the ALJ evaluated the evidence and resolved apparent conflicts relating to the 2009 CT scan, and reached a reasonable disability determination without the assistance of a Medical Expert.[17]  The ALJ's written decision provided a detailed recitation of the evidence supporting his conclusion that Attina was not disabled, giving every indication that Attina limitations had received a full and fair consideration.  Upon a review of the record as a whole, the ALJ did not abuse his discretion in deciding not to obtain assistance of a medical expert for the supplemental administrative hearing.

**IV.  Recommendation and Conclusion**

For the foregoing reasons, the undersigned finds that substantial evidence supports the ALJ's conclusion that Attina is not disabled and, therefore, not entitled to benefits.  The Court recommends that the Agency's final decision denying benefits to Victoria Attina be

---

[17]  A Medical Expert appeared when the ALJ initially opened the hearing in this matter. After finding the Medical Expert had not been provided a complete record, the ALJ continued the hearing.  The hearing resumed at a later date without a Medical Expert and Attina's counsel made no objection.  (Tr. 431.)

(1:09CV1946)

affirmed in its entirety and that the referral to the undersigned be terminated.


Dated: June 18, 2010                      __/s/ Benita Y. Pearson_____
                                          United States Magistrate Judge



**OBJECTIONS**

        Objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d
947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111
(1986).